# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| WESTERN SECURITY BANK, A Division of Glacier Bank,<br><br>Plaintiff,<br><br>vs.<br><br>SCHNEIDER LIMITED PARTNERSHIP, JAY WINZENREID, M.D., STEPHEN EMERY, BIG HORN BASIN BONE AND JOINT, LLC, ANDREW BAKER, DANIEL MATTSON,<br><br>Defendants. | CV 15-10-BLG-SPW-CSO<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This action arises from commercial guaranty agreements. Now pending are:

    (1) Plaintiff Western Security Bank's ("WSB") Motion for Summary Judgment (*ECF 12*) against Defendant Schneider Limited Partnership ("Schneider") as to Count 1 of the Complaint, and

    (2) Defendants Jay Winzenried, Stephen Emery, and Big Horn Basin Bone and Joint, LLC's ("Moving Defendants") Motion to Stay Proceedings (*ECF 17*).

Having reviewed the arguments and the applicable law, the Court recommends as follows.

I.  **BACKGROUND**

In December 2011, WSB entered into loan agreements with Meridian Surgical Partners, LLC and affiliates, and Omni Funding Corp., together with defendants Schneider, Andrew Baker, Daniel Mattson, Jay Winzenreid, Stephen Emery, and Big Horn Basin and Joint, LLC.  Pursuant to these agreements, WSB loaned more than $2.0 million for construction of an ambulatory surgical center in Billings, Montana.  *ECF 15* at 2.

Schneider and the Moving Defendants each executed an unconditional Commercial Guaranty Agreement, which guaranteed a certain percent of the debt owed to WSB by Omni.  *ECF 18-1*.  Omni defaulted on the loan in September 2013, and WSB now seeks to recover against the defendants for the money owed under the Guaranty Agreements.  WSB has previously settled its claims against the Meridian entities, Daniel Mattson, and Andrew Baker.  *ECF 15 at 3*.

Jurisdiction in this action rests on diversity.  The case was removed from state court in February 2015.  *ECF 1*.  The pending motions were filed in March.  The Court will first address the motion to stay proceedings.

## II. MOTION TO STAY

### A. PARTIES' ARGUMENTS

In February 2014, the Moving Defendants filed a Demand for Arbitration with the American Arbitration Association, naming Meridian Surgical Partners-Montana, LLC and Meridian Surgical Partners, LLC, as respondents. *ECF 23-3*. The arbitration is currently pending. The Moving Defendants argue that this case should be indefinitely stayed pending resolution of the arbitration between them and Meridian. Defendants argue that the operative facts in the arbitration are based on Meridian's failure to obtain a transfer agreement with a local Billings hospital in order to open the ambulatory surgical center. They argue that Meridian fraudulently induced them to move forward with the financing of the ASC by misrepresenting to them that Meridian had obtained a transfer agreement when in fact it had not. *ECF 18* at 24–25. They argue that both this action and the arbitration are about the damages they suffered as a result of reliance on the actions of Meridian, and that determination of liability and assessment of damages, including payment to WSB, will be resolved in the pending arbitration. *Id.* at 26.

The Moving Defendants further argue that a stay is warranted under either the mandatory grounds of the Federal Arbitration Act ("FAA"), 9 U.S.C § 3, or in the exercise of the Court's discretion. *Id.* at 24. They argue that a decision made in this proceeding could be used against them in the pending arbitration, there is the potential for contradictory findings, and WSB faces virtually no hardship based on the delay. *ECF 18* at 36.

WSB responds that the FAA is inapplicable because compelled arbitration is not sought in this case, nor could it be. *ECF 23* at 7. WSB is not contractually bound by a written arbitration agreement. *Id.* at 8.

WSB agrees that the standards for a discretional stay could apply here, but argues that the Moving Defendants have not met their burden. WSB argues that they seek an indefinite stay, which could put the case on hold for months or even years. *Id.* at 10–11. WSB argues that the monetary recovery sought in this case is not intertwined with the issues to be arbitrated, and that the resolution of the arbitration has no bearing on this Court's adjudication of WSB's claims. *Id.* at 11. If anything, WSB argues that a decision in this case would only cement the damages incurred by the Defendants, helping the arbitration, with

no risk of inconsistent results. *Id* at 16, 19. WSB argues that the allegations made in the Defendants' motion indicate the need for discovery to start. *Id.* at 15. Nonetheless, WSB also represents that it does not presently plan to seek substantive ruling from this Court until after the arbitration concludes. *See ECF 23 at 6–7.*

B. **LEGAL STANDARD**

The Supreme Court has emphasized that "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741–742 (9th Cir. 2014) (*quoting Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original) (internal quotation marks and citations omitted)). In determining whether parties have agreed to submit to arbitration, courts are to "apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Id.* (*quoting Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (internal quotation marks and citations omitted)). Once a dispute is referred to

arbitration, a suit may be stayed for the pendency of the arbitration. Specifically, the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

In addition to stays granted under the FAA, a stay may be granted based on the discretion of the Court. The U.S. Supreme Court announced the general principle that district courts have inherent power to control their dockets and promote efficient use of resources "for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). A district court thus enjoys discretion to stay proceedings in its own court when appropriate. *Id.*; *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). But the Ninth Circuit Court of Appeals cautions that it reviews a district court's exercise of discretion in entering a stay order under a "somewhat less deferential" standard than the abuse-of-discretion

standard employed in other contexts. *Dependable Highway*, 498 F.3d at 1066 (citation omitted).

In *Landis*, the Supreme Court provided the following guidance for courts considering motions for stay orders and observed that the analysis requires balancing the benefits of a stay with any hardship a stay may impose:

> [A party seeking] a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis*, 299 U.S. at 255.

The Ninth Circuit has refined the *Landis* standard with the following factors courts should consider: (1) generally, "stays should not be indefinite in nature" and "should not be granted unless it appears likely the other proceeding will be concluded within a reasonable time[,]" *Dependable Highway*, 498 F.3d at 1066 (*citing Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)); (2) courts more appropriately enter stay orders where a party seeks only damages, does not allege continuing harm, and does not seek injunctive or declaratory relief since a stay would result only in delay in monetary

recovery, *Lockyer*, 398 F.3d at 1110 (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268-69 (9th Cir. 1962)); (3) stays may be appropriate if resolution of issues in the other proceeding would assist in resolving the proceeding sought to be stayed, *id.* at 1110–1111 (citing *CMAX*, 300 F.2d at 269); and (4) stays may be appropriate for courts' docket efficiency and fairness to the parties pending resolution of independent proceedings that bear upon the case, "whether the separate proceedings are judicial, administrative, or arbitral in character, and [such stays do] not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 1111 (citing *Leyva*, 593 F.2d at 863–864).

### C. DISCUSSION

While the FAA instructs courts to stay disputes covered by an arbitration clause until after the arbitration has been conducted, the parties here are not moving to compel arbitration or to involve WSB in the current arbitration. The commercial guaranties at issue do not contain arbitration clauses. *ECF 18-1*.

This action is based on WSB's claims to payment under the Commercial Guaranty Agreements that the Moving Defendants each signed. The arbitration, however, involves the Moving Defendants'

claims for compensatory and incidental damages against respondents – who are not parties before the Court in this action. Although the arbitration apparently involves claims which relate to transactions pertaining to the construction of the ambulatory surgery center in Billings, Montana, the Moving Defendants have not shown that the arbitration would be hindered by further proceedings in this case. The FAA does not require a stay.

Finding that a stay under the FAA is inapplicable, the Court next has considered whether a discretionary stay is appropriate. Based on the *Landis* factors, the Court concludes that a stay would be inappropriate for three reasons. First, the stay requested by the Defendants would be indefinite in nature. The arbitration was already extended once (*ECF 24 at 6*) and there is no specific timeframe for a resolution. *See ECF 24-1*. WSB is not a party to the arbitration, yet a stay would indefinitely prevent WSB from seeking resolution of its claims here. Second, the resolution of the arbitration will not resolve any disputed issues in this case. The arbitration will not alter the Moving Defendants' obligations under the Guarantee Agreements. Finally, while this case does involve monetary damages alone, efficiency and fairness weigh in favor of denying the stay.

Thus, the Moving Defendants have not met their burden of demonstrating that a stay is necessary or advisable in this case. Therefore, it will be recommended that the motion to stay this action be denied.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  PARTIES' ARGUMENTS

WSB argues that it is entitled to summary judgment against Schneider on the first count in the Complaint. It argues that the Guaranty language is unambiguous and the law mandates entry of summary judgment. Specifically, WSB argues that in its Commercial Guaranty, Schneider "absolutely and unconditionally guarantees full and punctual payment and satisfaction of its Share of the Indebtedness." *ECF 13* at 5. WSB argues that Schneider contractually agreed WSB could look to Schneider for repayment irrespective of any other sources of repayment, and that only amounts actually paid by others would operate to reduce the debt. *ECF 13* at 6. WSP argues it is entitled, as a matter of law, to recover 28.75% of unpaid indebtedness from Schneider as a result of the Guaranty. *ECF 13* at 6–7.

Finally, WSB argues that even though Schneider's Answer to the Complaint suggests that Schneider meant to guarantee the debt of

another entity, that argument should be rejected. It argues that the agreement is clear and that because the unambiguous agreement was reduced to writing, the Court cannot look to extrinsic evidence in determining the intent of Schneider.

## B. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to

establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### C. <u>DISCUSSION</u>

Under applicable Montana law, the construction and interpretation of a contract is a question of law. *Corp. Air v. Edwards Jet Ctr.*, 190 P.3d 1111, 1120 (Mont. 2008). Once a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, where possible. M.C.A. § 28–3–303. The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity. M.C.A. § 28–3–401.

Whether there is ambiguity in a contract is also a question of law. *Corp. Air*, 190 P.3d at 1121. Ambiguity must be determined on an objective basis, and mere disagreement as to the interpretation of a written instrument is not sufficient to create an ambiguity. *Id*. Absent ambiguity, the Court must apply the language as written. *Id*.

The Schneider Guaranty clearly lists the borrower as Omni Funding Corp., the Lender as Western Security Bank, and the Guarantor as Schneider Limited Partnership. *ECF 15-1* at 1. The Guaranty states that the Guarantor, Schneider, "absolutely and unconditionally guarantees full and punctual payment and satisfaction

of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related Documents." *Id.* Additionally, the agreement specifies that:

> This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.
> \* \* \* \* \*
> Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor . . . . Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

*Id.* As a result of the language in the Guaranty, WSB argues that it is entitled to recover 28.75% of the unpaid indebtedness from Schneider under the Guaranty. Schneider has not responded to WSB's motion.

Schneider, in its Answer to the Complaint, states that "the intent of the guaranty was to guarantee the debts of ONI LLC, and not OMNI Funding Corp." *ECF 5* at ¶18. But Schneider has not raised any genuine issues of material fact by way of a response brief or a Statement of Disputed Facts. *See Local Rule 56.1(b).* The contract

explicitly states the Borrower's name, Omni Funding Corp. *ECF 15-1* at 1. Schneider has failed to provide any evidence demonstrating ambiguity, and the language of the agreement is clear as to the identity of the parties. Thus, the Court recommends that WSB's motion for partial summary judgment on liability be granted.

### III. CONCLUSION

Based on the foregoing,

IT IS RECOMMENDED that Defendants' Motion to Stay Action Pending Arbitration (*ECF 17*) be DENIED.

IT IS FURTHER RECOMMENDED that WSB's motion for partial summary judgment on liability (*ECF 12*) be GRANTED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 6th day of May, 2015.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge